## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ANTHEM INDUSTRIES, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>SHOP WORLD'S MART and JANE DOE, known only as Gail, individually and doing business as SHOP WORLD'S MART,<br><br>          Defendants. | CASE NO. _____ |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, TRADEMARK COUNTERFEITING, TRADEMARK DILUTION, UNFAIR COMPETITION, AND BREACH OF CONTRACT

Plaintiff Anthem Industries, LLC ("Anthem") submits this Complaint against defendants Shop World's Mart and Jane Doe, known only as Gail ("Gail"), individually and doing business as Shop World's Mart (collectively, the "Defendants") and alleges as follows:

### NATURE OF ACTION

1.     Anthem is a company that manufactures and sells detachable handles and sleeves for many brands of beverage cups and tumblers under the brand name GRIVITZ.

2.     Anthem holds a valid federal trademark application for its trademark GRIVITZ.

3.     As set forth in greater detail below, Defendants are knowingly and repeatedly engaged in unlawful business practices that defraud Anthem and consumers in a bait and switch scheme that willfully infringes Anthem's trademark rights and other rights related to the sale of handles under the brand name GRIVITZ. Defendants advertise and market to consumers that they sell GRIVITZ branded handles, but, the customer actually receives a lower quality handle that is not an authentic GRIVITZ branded handle.

4.     This action is for willful federal and state trademark infringement, federal trademark counterfeiting, federal trademark dilution, federal unfair competition, and unfair and deceptive trade practices in violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et seq.*

### THE PARTIES

5.     Anthem Industries, LLC is a limited liability company organized and existing under the laws of the state of Georgia with its principal place of business at 11675 Great Oaks Way, Suite 135, Alpharetta, Georgia 30022.  Anthem owns the trademark GRIVITZ and U.S. trademark application serial no. 87136920 ("GRIVITZ Mark").

6.     Defendant Shop World's Mart, based on information and belief, is a U.S. based business.

7.     Defendant Jane Doe, known only as Gail, is currently an individual whose full name is currently unknown and based on information and belief, is a resident of the United States.  Upon information and belief, Gail owns, operates and has control over Shop World's Mart and is doing business as Shop World's Mart.

## JURISDICTION AND VENUE

8.     This case involves trademark infringement under the Trademark Laws of the United States.

9.     This Court has subject matter jurisdiction over Anthem's federal claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), which grants this Court original jurisdiction pursuant to 15 U.S.C. § 1121(a) and §1125. The Court has supplemental jurisdiction over Anthem's state law claims pursuant to 28 U.S.C. §§1338(b) and 1367.

10.     Defendants are subject to the personal jurisdiction of this Court because, among other things, Defendants have purposefully availed themselves of the benefits of doing business in the State of Georgia by advertising, promoting,

and selling goods to the residents of Georgia and by causing injury to Anthem within Georgia.

11.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), (c)(1), and (c)(2) because Defendants are subject to personal jurisdiction in this district, and because a substantial part of the events giving rise to Anthem's claims took place in this district.   Moreover, Defendants transact business in this district, have committed tortious acts in this district and have engaged in activities that subject them to the jurisdiction of this Court.

## ANTHEM'S GRIVITZ MARK

12.    In the early fall of 2015, Anthem started developing a handle that would hold cups, mugs, tumblers, and drinkware sold under the brand name "Yeti®" ("Yeti Tumblers").

13.    Yeti Tumblers are sold across the world through the internet at on-line retail websites such as Amazon.com, at local retail stores, and through retail chains throughout the world.

14.    Yeti Tumblers are extremely popular and sales of Yeti Tumblers are extremely successful.

15.    Although the Yeti Tumblers are extremely popular and successful, the Yeti Tumblers do not have a handle.

16.     Observing that the Yeti Tumblers do not have handles, the principals of Anthem realized that the consuming public may want a handle on the Yeti Tumblers to make it easier to hold and carry them.

17.     The principals of Anthem searched the marketplace looking for a handle that fit the Yet Tumbler well, without slippage, and was comfortable to hold.

18.     Unable to find a suitable handle, the principals of Anthem, through trial and error, developed and created a unique handle that fits snugly and securely around the Yeti Tumblers and is comfortable to hold.

19.     Anthem has applied with the United States Patent and Trademark Office ("USPTO") for a patent for its handle.

20.     The principals of Anthem undertook significant efforts and spent significant sums to develop its handles for the Yeti Tumblers and secure manufacturers to make high quality handles for Anthem.

21.     After creating the handle for Yeti Tumblers, Anthem needed to adopt a unique attention-grabbing name for the handle for use in marketing to consumers.

22.     Anthem eventually adopted on the name "Grivitz."

23.     In December of 2015, Anthem began manufacturing and selling its handles using the GRIVITZ Mark.

24.    Anthem's handle sold under the GRIVITZ Mark ("GRIVITZ Handle") was an immediate success.

25.    A picture of the GRIVITZ Handle in use with a Yeti Tumbler is shown to the right.



26.    Anthem's sales of GRIVITZ Handles exponentially increased over the first few months.

27.    In addition, on August 12, 2016 Anthem filed U.S. trademark application no. 87136920, the GRIVITZ Mark for use with detachable handles used with beverage cups and sleeves for use with beverage cups. Anthem's application has been approved for publication in the USPTO's Official Gazette. A copy of printout from the U.S. Patent and Trademark Office's Trademark Electronic Search System ("TESS") is attached as Exhibit A.

28.    Throughout the United States, Anthem is known for its GRIVITZ Handles with their unequal quality, ease of use, and comfortability. Anthem's GRIVITZ Handles are manufactured and sold exclusively by Anthem through its website at <www.grivitz.com> and on <www.amazon.com>.   A screen printout

from <www.amazon.com> showing Anthem selling its GRIVITZ Handles is attached as Exhibit B.

29.     Anthem undertook significant efforts and expends considerable sums to develop and manufacture its GRIVITS Handles.

30.     Since Anthem began using Anthem's GRIVITZ Mark, substantial time, money and labor have been devoted to the development, enhancement, expansion, advertisement, promotion and marketing of product lines incorporating Anthem's GRIVITZ Mark.  Currently, those product lines include not only the authentic GRIVITZ Handles for Yeti Tumblers but handles for other brands of tumblers and sleeves for tumblers and cups that allow the consumer to more easily hold those tumblers and cups.  As a result of these efforts, the extensive goodwill built up by Anthem, and the high quality of products manufactured under the GRIVITZ Mark, Anthem has generated significant sales for products incorporating the GRIVITZ Mark.

31.     At no time has Anthem licensed or otherwise authorized Defendants to use Anthem's GRIVITZ Mark.

### DEFENDANTS' INFRINGING CONDUCT

32.     On information and belief, at some time after May 1, 2016, Defendants began listing and selling handles for Yeti Tumblers on <www.amazon.com> using Anthem's GRIVITZ Mark ("Counterfeit Handles").

33.     The Counterfeit Handles are marketed and sold on <www.amazon.com> as authentic GRIVITZ Handles. A screen printout from <www.amazon.com> showing Defendants selling handles using the GRIVITZ Mark from August 31, 2016 is attached as Exhibit C.

34.     As shown in Exhibit C, Defendants are selling handles using identical pictures and text used by Anthem on <www.amazon.com> to sell its GRIVITZ Handles and, specifically, use Anthem's GRIVITZ Mark to sell the handles.

35.     The Counterfeit Handles are not authentic GRIVITZ Handles for Yeti Tumblers manufactured by Anthem and are of a much lower quality than Anthem's GRIVITZ Handles.

36.     Anthem's authentic GRIVITZ Handles are shown in GRIVITZ Handle Image 1 and 2 below:



GRIVITZ Handle Image 1



GRIVITZ Handle Image 2

37.    GRIVITZ Handle Image 1 shows an authentic GRIVITZ Handle as it arrives with a label identifying the handle as an authentic GRIVITZ Handle. The upper ring is flat to provide the best fit on the Yeti Tumbler.

38.    GRIVITZ Handle Image 2 shows a different angle of the same authentic GRIVITZ Handle in which the GRIVITZ Mark is clearly visible on the bottom ring.

39.    Defendants Counterfeited Handle as it was received from Defendants is shown in CH Image 1 and 2 below:



CH Image 1



CH Image 2

40.    It is clear from CH Image 1 and CH Image 2 that the Defendants'

handle is a not an authentic GRIVITZ Handle.

41.    The handle sold by Defendant and shown in CH Image 1 and CH

Image 2 was not shipped with a label attached to it identifying the handle as an

authentic GRIVITZ Handle.

42.    The top ring of the handle sold by Defendants and shown in CH

Image 1 is not flat unlike the flat top ring on the authentic GRIVITZ Handle shown

in GRIVITZ Handle Image 1.

43.     The bottom ring of the handle sold by Defendants and shown in CH Image 2 does not show the GRIVITZ Mark in any way unlike the bottom ring on the authentic GRIVITZ Handle shown in GRIVITZ Handle Image 2.

44.     It is clear from a comparison of the GRIVITZ Handle Images and the CH Images that the handles have different colors, finishes, and are arranged with different angles and thickness.

45.     Defendants offered the Counterfeit Handles at prices much lower than Anthem; effectively undercutting Anthem's sales.

46.     As a result of Defendants' sales of Counterfeit Handles at much lower prices, Anthem was forced reduce the price it sells its authentic GRIVITZ Handles in order to prevent Defendants from obtaining all of Anthem's market share on <www.amazon.com>.

47.     At no point has Anthem authorized Defendants to sell authentic GRIVITZ Handles for Yeti Tumblers.

48.     On or around July 26, 2016, Anthem contacted Defendants, through an email address provided through Amazon, notifying Defendants of their trademark infringement and requested Defendants to cease using the GRIVITZ Mark.

49.     At the same time, Anthem filed multiple grievances with Amazon to have Defendants' Counterfeit Handles removed from Amazon.

50.     Eventually, Amazon removed Defendants' Counterfeit Handles for a few days in August 2016.

51.     After removal, Gail contacted Anthem regarding the handles that the Defendants sale claiming that she has the right to sale handles using the GRIVITZ Mark.

52.     Gail was notified that Defendants' actions constituted trademark infringement and counterfeiting and was warned not to use the GRIVITZ Mark in any listing to sell handles for tumblers or cups again.

53.     Despite Anthem's request for contact information, Gail refused to provide any contact information to Anthem except for her email address.

54.     At some time before or after contacting Anthem, Gail appealed to Amazon, to get Defendants' listing back up on Amazon.com.

55.     On information and belief, because Gail either omitted notifying Amazon the Defendants' products were not authentic GRIVITZ Handles or represented to Amazon that Defendants' products were authentic GRIVITZ Handles, Amazon granted Gail's appeal and allowed Defendants to re-list the Counterfeit Handles.

56.    Defendants continued to sell Counterfeit Handles despite Anthem's warnings.

57.    As a result of Defendants' continued infringement and counterfeiting, Anthem sent by email a cease and desist letter to Gail notifying her again of Defendants' trademark infringement and counterfeiting and to cease from using the GRIVITZ Mark.

58.    Defendants never complied with Anthem's cease and desist letter. However, due to Anthem's continued filing of grievances with Amazon, Amazon finally removed Defendants' listing on Amazon.com on or around September 4, 2016.

59.    Anthem's sales of its GRIVITZ Handles have significantly declined since Defendants' started selling the Counterfeit Handles.

60.    As a result of Defendants sales of Counterfeit Handles, Anthem has suffered significant damages as a result of lost sales and profits.

## COUNT I
### FEDERAL TRADEMARK INFRINGEMENT UNDER 32(1) OF THE LANHAM ACT, 15 U.S.C. § 1114(1)
### (AGAINST ALL DEFENDANTS)

61.    In Anthem's first ground for relief, Anthem alleges violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

62.    Anthem's GRIVITZ Mark is a valid trademark, identifying the source of goods and services provided by Anthem.  Anthem is the senior user of the GRIVITZ Mark in connection with the goods at issue in this lawsuit.

63.    Immediately after first using Anthem's GRIVITZ Mark in commerce without Anthem's authorization, Anthem notified Defendants of their infringing use of the GRIVITZ Mark. Despite receiving actual notice of the infringing use on multiple occasions, Defendants continue to sell products using the GRIVITZ Mark.

64.    Defendants unauthorized and infringing use of Anthem's GRIVITZ Mark is likely to cause confusion, mistake or deception as to the source, sponsorship or approval of Defendants' goods by Anthem.  The consuming public are likely to believe that Defendants' goods originate with Anthem, are licensed, sponsored or approved by Anthem, or in some way are connected with or related to Anthem.

65.    Gail is individually and personally liable for Shop World's Mart's trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

66.    Gail is a moving, active, conscious force behind Shop World's Mart's trademark infringement and wields discretionary authority within Shop World's

Mart by virtue of being an owner, member, officer, or manager with substantial decision making power.

67.    Defendants' unauthorized and infringing use of Anthem's GRIVITZ Mark in interstate commerce, constitutes intentional and willful infringement of Anthem's rights in its GRIVITZ Mark in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

68.    These acts have occurred in interstate commerce and have caused, and unless restricted by this Court will continue to cause, serious and irreparable injury to Anthem, for which Anthem has no adequate remedy of law.

69.    By reason of Defendants' conduct, Anthem has and will continue to suffer irreparable harm, and unless Defendants are enjoined from continuing their wrongful acts, the damage to Anthem will continue.

70.    In addition to an injunction, Anthem is entitled to profits, damages, and costs as provided by law including treble damages and attorney's fees in an amount to be determined at trial. Anthem is unable to ascertain, at present, the full extent of the monetary damages it has suffered.

COUNT II
FEDERAL TRADEMARK COUNTERFEITING
15 U.S.C. §1114
(AGAINST ALL DEFENDANTS)

71.    As the second ground for relief, Anthem alleges violation of 15 U.S.C. §1114.

72.    Anthem's GRIVITZ Mark is a valid trademark, identifying the source of goods and services provided by Anthem.  Anthem is the senior user of its GRIVITZ Mark in connection with the goods at issue in this lawsuit.

73.    Immediately after first using Anthem's GRIVITZ Mark in commerce without Anthem's authorization, Anthem notified Defendants of their unlawful use of the GRIVITZ Mark. Despite receiving actual notice of the unlawful use on multiple occasions, Defendants continue to sell products using the GRIVITZ Mark.

74.    Without Anthem's authorization or consent, Defendants use a designation identical or substantially indistinguishable from Anthem's GRIVITZ Mark to offer and advertise goods and products nearly identical to those offered for sale by Anthem.  As a result, Defendants have engaged in trademark counterfeiting in violation of 15 U.S.C. §1114.

75.    Defendants' use of designations identical or substantially indistinguishable from Anthem's GRIVITZ Mark in connection with identical goods is likely to cause and is causing confusion, mistake and deception among

consumers as to the origin of Defendants' goods, and is likely to deceive the public into believing the goods being offered and sold by Defendants originate from, are associated with, or are otherwise authorized by Anthem, all to the damage and detriment of Anthem's reputation and goodwill.

76.     Gail is individually and personally liable for Shop World's Mart's trademark counterfeiting in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

77.     Gail is a moving, active, conscious force behind Shop World's Mart's trademark counterfeiting and wields discretionary authority within Shop World's Mart by virtue of being an owner, member, officer, or manager with substantial decision making power.

78.     These acts have occurred in interstate commerce and have caused, and unless restricted by this Court will continue to cause, serious and irreparable injury to Anthem, for which Anthem has no adequate remedy of law.

79.     By reason of Defendants' conduct, Anthem has and will continue to suffer irreparable harm, and unless Defendants are enjoined from continuing their wrongful acts, the damage to Anthem will continue.

80.     In addition to an injunction, Anthem is entitled to profits, damages, and costs as provided by law including treble damages and attorney's fees in an

amount to be determined at trial. Anthem is unable to ascertain, at present, the full extent of the monetary damages it has suffered.

**COUNT III**
**FEDERAL TRADEMARK DILUTION**
**15 U.S.C. §1125(C)**
**(AGAINST ALL DEFENDANTS)**

81.     As the third ground for relief, Anthem alleges violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

82.     As a result of the duration, extent, and geographic reach of Anthem's use of Anthem's GRIVITZ Mark and the publicity and advertising and publicity associated with the Anthem's GRIVITZ Mark, Anthem's GRIVITZ Mark has achieved an extensive degree of distinctiveness and is famous marks under the Lanham Act, 15 U.S.C. §1125(c).  Anthem's GRIVITZ Mark is widely recognized by the consuming public as a designation of source of Anthem's goods.

83.     Defendants began using the designation identical or substantially indistinguishable to Anthem's GRIVITZ Mark in interstate commerce in connection with Defendants' goods and services after Anthem's GRIVITZ Mark became famous and distinctive.

84.     Defendants' use of the designation identical or substantially indistinguishable to Anthem's GRIVITZ Mark dilutes, or is likely to dilute, by blurring the distinctive quality of Anthem's GRIVITZ Mark and by tarnishing the

reputation of Anthem and Anthem's GRIVITZ Mark under Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

85.    Gail is individually and personally liable for Shop World's Mart's trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

86.    Gail is a moving, active, conscious force behind Shop World's Mart's trademark dilution and wields discretionary authority within Shop World's Mart by virtue of being an owner, member, officer, or manager with substantial decision making power.

87.    These acts have occurred in interstate commerce and have caused, and unless restricted by this Court will continue to cause, serious and irreparable injury to Anthem, for which Anthem has no adequate remedy of law.

88.    By reason of Defendants' conduct, Anthem has and will continue to suffer irreparable harm, and unless Defendants are enjoined from continuing their wrongful acts, the damage to Anthem will continue.

89.    In addition to an injunction, Anthem is entitled to profits, damages, and costs as provided by law including treble damages and attorney's fees in an amount to be determined at trial. Anthem is unable to ascertain, at present, the full extent of the monetary damages it has suffered.

## COUNT IV
## FEDERAL UNFAIR COMPETITION
## 15 U.S.C. §1125(A)
## (AGAINST ALL DEFENDANTS)

90.     As the fourth ground for relief, Anthem alleges violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

91.     The primary market context in which Defendants' products are listed and sold is directed towards customers seeking Anthem's GRIVITZ products.

92.     Defendants engage in direct competition with Anthem.

93.     Defendants are passing off, or palming off their products as Anthem's products by using the GRIVITZ Mark.

94.     The products sold by Defendants using the GRIVITZ Mark are not authentic Anthem products and are of much lower quality.

95.     Defendants are intentionally capitalizing on the fame of Anthem's GRIVITZ products and exploiting the reputation or goodwill that Anthem has developed.

96.     There would be appreciably less demand among target customers for Defendants' products if the products did not reference GRIVITZ.

97.     Defendants' unauthorized use of Anthem's GRIVITZ Mark, as alleged herein, constitutes use of a false designation of origin and false or misleading representation in interstate commerce, which wrongly and falsely

designates, describes and represents the origin of Defendants' services as originating from or being connected with Anthem, and is likely to cause confusion, or to cause mistake, or to deceive as to Defendants' affiliation, connection or association with Anthem, or as to the origin, sponsorship or approval of Defendants' services by Anthem in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

98.   Gail is individually and personally liable for Shop World's Mart's unfair competition in violation of Section 43(c) of the Lanham Act, 15 U.S.C. §1125(a).

99.   Gail is a moving, active, conscious force behind Shop World's Mart's unfair competition and wields discretionary authority within Shop World's Mart by virtue of being an owner, member, officer, or manager with substantial decision making power.

100.   These acts have occurred in interstate commerce and have caused, and unless restricted by this Court will continue to cause, serious and irreparable injury to Anthem, for which Anthem has no adequate remedy of law.

101.   By reason of Defendants' conduct, Anthem has and will continue to suffer irreparable harm, and unless Defendants are enjoined from continuing their wrongful acts, the damage to Anthem will continue.

102.   In addition to an injunction, Anthem is entitled to profits, damages, and costs as provided by law including treble damages and attorney's fees in an amount to be determined at trial. Anthem is unable to ascertain, at present, the full extent of the monetary damages it has suffered.

**COUNT V**
**GEORGIA UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**O.C.G.A. § 10-1-370, *et seq*.**
**(AGAINST ALL DEFENDANTS)**

103.   As the fifth ground for relief, Anthem alleges Defendants violated the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A § 10-1-370, *et seq*.

104.   The statements, actions, and inactions of Defendants in using Anthem's GRIVITZ Mark, as more fully described herein, constitute unfair and deceptive trade practices which were in and affect commerce, and which offend public policy, and are immoral, unethical, oppressive, unscrupulous, and substantially injurious.

105.   The statements, actions, and inactions of Defendants violated the prohibition against unfair and deceptive trade practices found in O.C.G.A. § 10-1-370, *et seq*.

106.   Defendants' unauthorized use of Anthem's GRIVITZ Mark, as alleged herein, has caused, and is likely to cause in the future, a likelihood of confusion or misunderstanding as to the sponsorship, approval, affiliation or

connection of Defendants' and Anthem's businesses, inasmuch as it gives rise to the incorrect belief that Defendants' business has some connection with Anthem. These acts constitute deceptive trade practices in the course of Defendants' businesses in violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et seq.*

107.   Gail is individually and personally liable for Shop World's Mart's violations of the prohibition against unfair and deceptive trade practices found in O.C.G.A. § 10-1-370, *et seq.*

108.   Gail is a moving, active, conscious force behind Shop World's Mart's unfair trade and deceptive practices and wields discretionary authority within Shop World's Mart by virtue of being an owner, member, officer, or manager with substantial decision making power.

109.   These acts have occurred in interstate commerce and have caused, and unless restricted by this Court will continue to cause, serious and irreparable injury to Anthem, for which Anthem has no adequate remedy of law.

110.   By reason of Defendants' conduct, Anthem has and will continue to suffer irreparable harm, and unless Defendants are enjoined from continuing their wrongful acts, the damage to Anthem will continue.

111.   In addition to an injunction, Anthem is entitled to profits, damages, and costs as provided by law including statutory damages, treble damages, and attorney's fees in an amount to be determined at trial. Anthem is unable to ascertain, at present, the full extent of the monetary damages it has suffered.

**COUNT VI**
**GEORGIA TRADEMARK INFRINGEMENT**
**O.C.G.A. § 23-2-55**
**(AGAINST ALL DEFENDANTS)**

112.   As the sixth ground for relief, Anthem alleges trademark infringement under Georgia law, O.C.G.A. § 23-2-55.

113.   The acts of Defendants constitute trademark infringement under Georgia law, O.C.G.A. § 23-2-55.

114.   Upon information and belief, Defendants have acted willfully, and with the intention and the likely result of confusing, misleading, and deceiving consumers.

115.   The acts of Defendants constitute willful infringement of Anthem's GRIVITZ Mark.

116.   Gail is individually and personally liable for Shop World's Mart's trademark infringement under Georgia state law.

117.   Gail is a moving, active, conscious force behind Shop World's Mart's state trademark infringement and wields discretionary authority within Shop

World's Mart by virtue of being an officer, member, officer, or manager with substantial decision making power.

118.   These acts have occurred in interstate commerce and have caused, and unless restricted by this Court will continue to cause, serious and irreparable injury to Anthem, for which Anthem has no adequate remedy of law.

119.   By reason of Defendants' conduct, Anthem has and will continue to suffer irreparable harm, and unless Defendants are enjoined from continuing their wrongful acts, the damage to Anthem will continue.

120.   In addition to an injunction, Anthem is entitled to profits, damages, and costs as provided by law including statutory damages, treble damages, and attorney's fees in an amount to be determined at trial. Anthem is unable to ascertain, at present, the full extent of the monetary damages it has suffered.

## PRAYER FOR RELIEF

Anthem prays that this Court will enter a judgment and order against Shop World's Mart and Jane Doe, known as Gail, individually and doing business as Shop World's Mart as follows:

1.     Shop World's Mart and Jane Doe, known as Gail, individually and doing business as Shop World's Mart willfully violated Sections 32, 43(a), and 43(c) of the Lanham Act;

2.      Shop World's Mart and Jane Doe, known as Gail, individually and doing business as Shop World's Mart committed acts of unfair and deceptive business and trade practices under Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et seq.*;

3.      Shop World's Mart and Jane Doe, known as Gail, individually and doing business as Shop World's Mart willfully violated O.C.G.A. § 23-2-55.

4.      Defendants and their owners, officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, shall be preliminarily and permanently enjoined and restrained from:

a. Using Anthem's GRIVITZ Mark or any reproduction, counterfeit, copy, or colorable imitation thereof in any manner in connection with the sale, offering for sale, distribution, or advertising of any goods or services that are not authorized by Anthem;

b. Using any name, designation, or mark that wholly incorporates Anthem's GRIVITZ Mark or is confusingly similar to, including but not limited to any reproduction, counterfeit, copy or a colorable imitation of Anthem's GRIVITZ Mark;

   c.  Doing any other act or thing likely to induce or cause confusion or the mistaken belief that Defendants are in any way affiliated, connected, or associated with Anthem or its services;

   d.  Injuring Anthem's business reputation and the goodwill associated with Anthem's GRIVITZ Mark and from otherwise unfairly competing with Anthem in any manner whatsoever;

   e.  Passing off Defendants' goods or services as those of Anthem; and

   f.  Committing any acts which will dilute, blur or tarnish, or are likely to dilute, blur or tarnish, the distinctive quality of the Anthem's famous GRIVITZ Mark.

5.    Pursuant to 15 U.S.C. §1118, Defendants be required to deliver up and destroy all products, labels, signs, packages, wrappers, advertisements, promotions and all other matter in the custody or under the control of Defendants that bear any Anthem's GRIVITZ Mark or any other mark that is likely to be confused with Anthem's GRIVITZ Mark;

6.    Because of Defendants' willful actions and pursuant to 15 U.S.C. §1117, Anthem be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

a.  all profits received by Defendants from sales and revenue of any kind made as a result of their actions, and all damages sustained by Anthem as a result of Defendants' actions, and that such profits and damages be trebled; or,

b.  if Anthem so elects, an award for statutory damages pursuant to 15 U.S.C. §1117(c)(2) consisting of $2,000,000 per counterfeit mark, per type of goods or services sold, offered for sale or distributed; and,

c.  the cost of the action.

7.      Pursuant to 15 U.S.C. §1116, Defendants be directed to file with the Court and serve on Anthem within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

8.      Because of trademark counterfeiting and the exceptional nature of this case resulting from Defendants' deliberate and willful infringing actions, this court award to Anthem all reasonable attorneys' fees, costs, and disbursements incurred by it as a result of this action, pursuant to 15 U.S.C. §§1117(a) and (b) and, if available, under Georgia state law;

9.    That Anthem shall have such other and further relief as this Court may deem just against such Defendants.

Respectfully submitted on September _____, 2016.

/s/ James M. Johnson
James M. Johnson
Georgia Bar No. 394615
Nicholas T. Sears
Georgia Bar No. 491480

**KNIGHT JOHNSON, LLC**
One Midtown Plaza
1360 Peachtree Street, Suite 1201
Atlanta, Georgia 30309
Tel: (404) 228-4822
Fax: (404) 228-4821
jjohnson@knightjohnson.com
nsears@knightjohnson.com

Gregory D. Latham (*pro hac vice* pending)
Kent Barnett (*pro hac vice* pending)

**INTELLECTUAL PROPERTY
CONSULTING, LLC.,**
334 Carondelet Street, Suite B
New Orleans, Louisiana 70130
Tel: (504) 322-7166
Fax: (504) 322-7184
glatham@iplawconsulting.com
kbarnett@iplawconsulting.com

*Attorneys for Plaintiff Anthem Industries, LLC*